UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

GLENDA SHEPPARD,

Plaintiff,

v. Case No. 8:25-CV-01237-SPF

COMMISSIONER OF SOCIAL SECURITY,

Defendant.
_______________________________/

**ORDER**

Plaintiff seeks judicial review of the Commissioner's denial of her claim for disability insurance benefits (DIB), which was filed on June 25, 2021. As the Administrative Law Judge's ("ALJ") decision was based on substantial evidence and employed proper legal standards, the Commissioner's decision is affirmed.

## I. Procedural Background

Plaintiff applied for DIB, alleging disability since January 5, 2021 (Tr. 182). The Commissioner denied Plaintiff's claims both initially on March 30, 2022 (Tr. 88–97) and upon reconsideration on August 14, 2023 (Tr. 103–10). Plaintiff then requested an administrative hearing (Tr. 111–12). The ALJ held a video hearing on March 5, 2024 (Tr. 37–65). Following the hearing, the ALJ issued an unfavorable decision finding Plaintiff not disabled and therefore denying Plaintiff's claims for benefits on May 31, 2024 (Tr. 15–34). Plaintiff then requested review from the Appeals Council, which was denied on March 20, 2025 (Tr. 1–7). On that date, the hearing decision became the "final decision" of the Commissioner of Social

Security ("Commissioner") subject to judicial review. 20 C.F.R. § 404.900(a)(5). The case is now ripe for review under 42 U.S.C. § 405(g).

**II. Factual Background and the ALJ's Decision**

Plaintiff was born in 1960 and claimed disability beginning January 5, 2021 (Tr. 182). Plaintiff completed high school and had past relevant work experience as a customer service representative (Tr. 237–38). Plaintiff alleged disability due to COVID-19 infection, shortness of breath, fatigue, an inability to walk long, headaches, high blood pressure, and asthma (Tr. 236).

In rendering the administrative decision, the ALJ concluded that Plaintiff met the insured status requirements through March 31, 2027 (Tr. 20). The ALJ further found that Plaintiff engaged in substantial gainful activity from April 17, 2023, through October 4, 2023, but continued with the sequential evaluation because that work might constitute an unsuccessful work attempt or fall within a trial work period and because another basis existed for denying the claim (Tr. 20–21).

After conducting the hearing and reviewing the evidence of record, the ALJ determined that Plaintiff had the following severe impairments: a history of coronavirus disease ("COVID"), chronic obstructive pulmonary disease ("COPD"), hypertension, and obesity (*Id.*). Notwithstanding the noted impairments, the ALJ determined that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of any impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 (Tr. 21–22). The ALJ then concluded that Plaintiff retained the residual functional capacity ("RFC") to perform sedentary work as defined in 20 C.F.R. § 404.1567(a), with the following additional limitations:

> [T]he claimant can occasionally lift or carry 10 pounds; can frequently lift or carry less than 10 pounds; can sit for a period of 6 hours; stand for a period of 2 hours; walk for a period of 2 hours; and push and pull as much as they can lift and carry. The claimant can occasionally climb ramps and stairs; occasionally climb ladders, ropes, or scaffolds; can frequently stoop, kneel, crouch, and crawl. The claimant can also have occasional exposure to dust, odors, fumes and pulmonary irritants, and occasional exposure to extreme cold and extreme heat. The claimant would be limited to only frequent oral communication.

(Tr. 22). In formulating Plaintiff's RFC, the ALJ considered Plaintiff's subjective complaints and determined that, although Plaintiff's medically determinable impairments reasonably could be expected to cause the alleged symptoms, Plaintiff's statements concerning the intensity, persistence, and limiting effects of those symptoms were not entirely consistent with the medical evidence and other evidence in the record. (Tr. 23).

The vocational expert ("VE") testified that a person with Plaintiff's age, education, work experience, and RFC could perform Plaintiff's past relevant work as a customer service representative, both as generally performed in the national economy and as actually performed (Tr. 29–30). Based on Plaintiff's age, education, work experience, RFC, and the testimony of the VE, the ALJ found that Plaintiff was not disabled (Tr. 30). The Appeals Council declined to review the ALJ's decision, and it therefore became the final decision of the Commissioner (Tr. 1-7).

**III. Legal Standard**

To be entitled to benefits, a claimant must be disabled, meaning she must be unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death, or which has lasted or will likely last for a continuous period of not less than twelve months. 42 U.S.C. § 423(d)(1)(A), 1382c(a)(3)(A). A "physical or mental impairment" is an impairment that results from anatomical, physiological, or psychological abnormalities, which are demonstrable by

medically acceptable clinical and laboratory diagnostic techniques. 42 U.S.C. § 423(d)(3), 1382c(a)(3)(D).

The Social Security Administration has established a standardized "sequential evaluation process" to determine whether a claimant is disabled. 20 C.F.R. § 404.1520. If an individual is found disabled at any point in the sequential review, further inquiry is unnecessary. 20 C.F.R. § 404.1520(a). Under this process, the ALJ must determine, in sequence: 1) whether the claimant is engaged in substantial gainful activity; 2) whether the claimant has a severe impairment, i.e., one that significantly limits the ability to perform work-related functions; 3) whether the severe impairment meets or equals the medical criteria of 20 C.F.R. Part 404 Subpart P, Appendix 1; and 4) whether a claimant can perform her past relevant work based on her RFC. If the claimant cannot perform the tasks required of her prior work, step five of the evaluation requires the ALJ to decide if a claimant can do other work in the national economy in view of her age, education, and work experience. 20 C.F.R. § 404.1520(a). A claimant is entitled to benefits only if unable to perform other work. *Bowen v. Yuckert*, 482 U.S. 137, 140–42 (1987); 20 C.F.R. § 404.1520(g).

A determination by the Commissioner that a claimant is not disabled must be upheld if it is supported by substantial evidence and comports with applicable legal standards. *See* 42 U.S.C. § 405(g), 1383(c)(3). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938) (internal quotation marks omitted)); *Miles v. Chater*, 84 F.3d 1397, 1400 (11th Cir. 1996). While the court reviews the Commissioner's decision with deference to the factual findings, no such deference is given

to the legal conclusions. *Keeton v. Dep't of Health & Human Servs.*, 21 F.3d 1064, 1066 (11th Cir. 1994) (citations omitted).

In reviewing the Commissioner's decision, the court may not reweigh the evidence or substitute its own judgment for that of the ALJ even if it finds that the evidence preponderates against the ALJ's decision. *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983). Simply put, if there exists "more than a mere scintilla" of relevant evidence to support the Commissioner's decision, a court must affirm, regardless of whether a court would have reached a different decision based on the evidence. *Biestek v. Berryhill*, 587 U.S. 97, 103 (2019) (citation and internal quotation omitted). The Commissioner's failure to apply the correct law, or to give the reviewing court sufficient reasoning to determine that he or she has conducted the proper legal analysis, mandates reversal. *Keeton*, 21 F.3d at 1066. Review is thus limited to determining whether the findings of the Commissioner are supported by substantial evidence and whether the correct legal standards were applied. 42 U.S.C. § 405(g); *Wilson v. Barnhart*, 284 F.3d 1219, 1221 (11th Cir. 2002).

## IV. Analysis

Plaintiff challenges the ALJ's decision by arguing that the ALJ (1) improperly evaluated Plaintiff's symptom testimony under 20 C.F.R. § 404.1529 and SSR 16-3p and (2) improperly evaluated the treating source opinion of Dr. Colucci, resulting in an incomplete RFC and an erroneous step four finding. The Commissioner counters that the ALJ's decision is supported by substantial evidence and employs the correct legal standards. For the following reasons, the decision is affirmed.

**A. The ALJ's Treatment of Plaintiff's Subjective Complaints**

Plaintiff first argues that the ALJ erred in failing to properly consider her subjective complaints of shortness of breath, fatigue cognitive deficits under 20 C.F.R. § 404.1529 and SSR 16-3p. (Doc. 13 at 6). In determining whether a claimant is disabled, the ALJ must consider all symptoms, including pain, and the extent to which those symptoms are reasonably consistent with the objective medical evidence and other evidence. 20 C.F.R. § 404.1529(a). Once a claimant establishes that her pain or other subjective symptoms are disabling, "all evidence about the intensity, persistence, and functionally limiting effects of pain or other symptoms must be considered in addition to the medical signs and laboratory findings in deciding the issue of disability.'" *Land v. Comm'r of Soc. Sec.*, 843 F. App'x 153, 155 (11th Cir. 2021) (per curiam) (quoting *Foote v. Chater*, 67 F.3d 1553, 1561 (11th Cir. 1995)).

The Eleventh Circuit has established a three-part "pain standard" for an ALJ to apply in evaluating a claimant's subjective complaints. The standard requires: (1) evidence of an underlying medical condition; and either (2) objective medical evidence to confirm the severity of the alleged pain arising from that condition, or (3) that the objectively determined medical condition is of such severity it can reasonably be expected to give rise to the alleged pain. *Holt v. Sullivan*, 921 F.2d 1221, 1223 (11th Cir. 1991). "When evaluating a claimant's subjective symptoms, the ALJ must consider such things as: (1) the claimant's daily activities; (2) the nature, location, onset, duration, frequency, radiation, and intensity of pain and other symptoms; (3) precipitating and aggravating factors; (4) adverse side-effects of medications; and (5) treatment or measures taken by the claimant for relief of symptoms." *Davis v. Astrue*, 287 F. App'x 748, 760 (11th Cir. 2008) (citing 20 C.F.R. § 404.1529(c)(3)(i)-(iv)). If an ALJ

rejects a claimant's subjective testimony, she must articulate explicit and adequate reasons for her decision. *Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005) (per curiam).

Social Security Ruling (SSR) 16-3p cautions that "subjective symptom evaluation is not an examination of an individual's character." SSR 16-3p, 2017 WL 4790249 (Oct. 25, 2017). Regulations require an ALJ to consider all the claimant's symptoms, including pain, and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence in the record. 20 C.F.R. § 404.1529(a). The regulations define "objective evidence" to include medical signs shown by medically acceptable clinical diagnostic techniques or laboratory findings. 20 C.F.R. § 404.1529. "Other evidence," again as the regulations define, includes evidence from medical sources, medical history, and statements about treatment the claimant has received. See 20 C.F.R. § 404.1513. Subjective complaint evaluations are the province of the ALJ. *Mitchell v. Comm'r of Soc. Sec.*, 771 F.3d 780, 782 (11th Cir. 2014).

Plaintiff testified that she continued to experience shortness of breath and fatigue after contracting COVID-19; could stand approximately ten minutes; became short of breath while walking approximately thirty feet to her mailbox; and became exhausted while showering, making the bed, doing laundry, and loading the dishwasher (Tr. 43–53). She also testified that she used a shower chair, rarely drove, no longer vacuumed, walked for exercise, or bowled (*Id.*). The ALJ summarized these allegations, including Plaintiff's assertions that she could lift seven to ten pounds, had no difficulty sitting, could stand for approximately ten minutes, and experienced shortness of breath with extended talking and exertion (Tr. 23).

The ALJ relied on boilerplate language in assessing Plaintiff's subjective complaints:

> After careful consideration of the evidence, the undersigned finds that the claimant's medically determinable impairments could reasonably be expected

> to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision.

(Tr. 23). This language directly addresses the Eleventh Circuit's standard and is not improper *if* supported by substantial evidence. *See Danan v. Colvin*, No. 8:12-cv-7-T-27TGW, 2013 WL 1694856, at *3 (M.D. Fla. Mar. 15, 2013), *report and recommendation adopted*, 2013 WL 1694841 (Apr. 18, 2013). Here, the Court finds it is.

Before reaching that determination, the ALJ reviewed Plaintiff's treatment history in detail (Tr. 23–26). The ALJ acknowledged repeated abnormal findings, including tachypnea, respiratory distress during pulmonary testing, decreased breath sounds, wheezing, impaired memory, and an ill appearance (Tr. 24–26). At the same time, the ALJ noted that many examinations showed normal pulmonary effort, no respiratory distress, normal breath sounds, no wheezing, and normal musculoskeletal findings (*Id.*). Acknowledging this differing record and Plaintiff's complaints of respiratory difficulty and fatigue, the ALJ restricted Plaintiff to sedentary work with postural and environmental restrictions and no more than frequent oral communication (Tr. 26–27).

Plaintiff argues that the ALJ impermissibly cherry-picked normal examination findings while ignoring the longitudinal evidence of respiratory abnormalities, improperly discounted the July 2023 pulmonary function study, and failed to discuss her daily activities, medication side effects, and aggravating factors (Doc. 13 at 3–7). The Commissioner responds that the ALJ considered the record as a whole, expressly acknowledged abnormal findings, considered Plaintiff's reports concerning talking and exertion, and articulated substantial evidence supporting the symptom evaluation (Doc. 23 at 9–13).

Plaintiff's cherry-picking argument is unpersuasive. The ALJ is not obligated to discuss "every piece of evidence." *Dyer*, 395 F.3d at 1211. The ALJ "need not cite particular phrases or formulations" in conducting an assessment of a claimant's symptoms so long as the reviewing court can be satisfied that the ALJ "considered [the claimant's] medical condition as a whole." *Chatham v. Comm'r of Soc. Sec.*, 764 F. App'x 864, 868 (11th Cir. 2019) (per curiam) (internal quotation marks and citation omitted); *see also Stowe v. Soc. Sec. Admin., Comm'r*, 2021 WL 2912477, at *4 (11th Cir. July 12, 2021) (per curiam) (explaining that if an ALJ does not identify specific and adequate reasons for rejecting a claimant's testimony about pain, "the record must be obvious as to the [ALJ's] credibility finding") (citing *Foote*, 67 F.3d at 1561–62).

Here, the ALJ did not ignore Plaintiff's abnormal respiratory findings. Instead, she repeatedly acknowledged tachypnea, respiratory distress during pulmonary testing, decreased breath sounds, wheezing, and impaired memory before contrasting those findings with examinations that were otherwise largely unremarkable (Tr. 24–28). Contrary to the Plaintiff's assertion, the ALJ's failure to repeat every notation that Plaintiff appeared ill does not establish that she disregarded the contrary evidence.

The ALJ also did not impermissibly interpret the July 2023 pulmonary function study. The ALJ accurately recited that the study showed moderate obstructive and restrictive lung disease and moderately reduced diffusion capacity, recognized that it differed from the earlier testing, and concluded that the evidence as a whole supported some degree of respiratory restriction (Tr. 28). Rather than substituting her own medical judgment for the study's findings, the ALJ accepted the abnormal results and accounted for them by limiting Plaintiff to a reduced range of sedentary work (*Id.*). Her comparison of those results with the

corresponding treatment records was part of the ALJ's responsibility to evaluate the consistency of the evidence.

Finally, Plaintiff argues that the ALJ failed to properly consider evidence regarding Plaintiff's activities, the side effects of Plaintiff's medications, and any aggravating factors, including exertion and conversation. (Doc. 13 at 9–10). Plaintiff is correct that the ALJ did not expressly identify Plaintiff's daily activity testimony in her step four analysis. However, the ALJ did state that she considered "all symptoms." (Tr. 22). Moreover, neither § 404.1529 nor SSR 16-3p require a mechanical discussion of every listed factor. *Griffis v. Acting Comm'r of Soc. Sec.*, No. 3:22-CV-800-PDB, 2023 WL 6307173, at *7 (M.D. Fla. Sept. 28, 2023) (rejecting argument that the ALJ erred in failing to considering the plaintiff's daily activities because "[t]he ALJ explicitly discussed some factors and had no obligation to explicitly discuss all of them."); *Terry C. v. Kijakazi*, No. 1:20-CV-04199-AJB, 2022 WL 888166, at *15 (N.D. Ga. Mar. 25, 2022) ("[T]he caselaw in this Circuit has made clear that an ALJ is not required to discuss each individual factor set out in 20 C.F.R. § 404.1529(c)(3)."); Here, the ALJ discussed Plaintiff's reports that conversation and exertion aggravated her shortness of breath, reviewed her course of treatment, and considered her testimony that she did not use an assistive device (Tr. 23–28). Although Plaintiff points to her chronic steroid use, she identifies no evidence that medication side effects imposed additional functional limitations (Tr. 255, 262, 268, 716).

Accordingly, the ALJ did not reject Plaintiff's statements purely because the objective evidence did not fully substantiate them. In addition to the medical signs and testing, the ALJ considered Plaintiff's reported limitations, treatment history, lack of an assistive device, and the medical opinion evidence of Dr. Steven Colucci, and the administrative findings of Dr.

Aixa Garcia and Dr. P.S. Krishnamurthy (Tr. 23–29). She also credited Plaintiff's allegations in part by limiting her to sedentary work, restricting her exposure to pulmonary irritants and temperature extremes, and limiting her to only frequent oral communication (Tr. 22, 26–29). The Court may not reweigh the evidence merely because the record also contains evidence supporting greater limitations. *Bloodsworth*, 703 F.2d at 1239.

In light of the ALJ's thorough analysis of Plaintiff's medical record and subjective complaints, the Court is satisfied that the ALJ considered Plaintiff's condition as a whole and concludes that the ALJ's finding is supported by substantial evidence. *Foote*, 67 F.3d at 1562 (citation omitted) (stating that a reviewing court will not disturb a clearly articulated credibility finding made by an ALJ that is supported by substantial evidence).

**B. The ALJ's Rejection of Treating Source Dr. Colucci's Opinion**

As alluded to above, the ALJ's task at step four is to determine a claimant's RFC and her ability to engage in her past relevant work experience. *See* 20 C.F.R. §§ 404.1520(a)(4)(iv), 404.1545. To do so, an ALJ must decide based upon all of the pertinent evidence before her what a claimant can do in a work setting despite any physical or mental restrictions caused by the claimant's impairments and related symptoms. 20 C.F.R. § 404.1545(a)(1). In making this assessment, the ALJ must review the medical opinions of record, as well as all the claimant's medically determinable impairments and the total limiting effects of each. 20 C.F.R. §§ 404.1520(e), 404.1545(a)(3); *Jamison v. Bowen*, 814 F.2d 585, 588 (11th Cir. 1987).

A medical opinion comes from a medical source regarding what a claimant may be able to do despite her impairments, including whether the claimant is limited in her capacity to perform various work activities and whether the claimant can see, hear, or use her other senses or "adapt to environmental conditions, such as temperature extremes or fumes." 20

C.F.R. § 404.1513(a)(2). A prior administrative medical finding, on the other hand, is made about a claimant's medical condition by the Social Security Administration's federal and state medical consultants at a prior review of a claimant's disability application. 20 C.F.R. § 404.1513(a)(5). An ALJ is required to consider the opinions from all medical sources and prior administrative medical findings when evaluating a claimant's application for disability. 20 C.F.R. § 404.1520c(b).

The Regulations governing the evaluation of medical opinions and prior administrative medical findings were amended for disability applications filed on or after March 27, 2017, as this one was. 20 C.F.R. § 404.1520c. As to each medical source, the ALJ must consider: (1) supportability; (2) consistency; (3) relationship with the claimant; (4) specialization; and (5) "other factors that tend to support or contradict a medical opinion or prior administrative medical finding." 20 C.F.R. § 404.1520c(c). But the first two factors are the most important: "[u]nder the new rule, the SSA will consider the persuasiveness of all medical opinions and evaluate them primarily on the basis of supportability and consistency." *Mackey v. Saul*, 2020 WL 376995, at *4, n.2 (D.S.C. Jan. 6, 2020), citing 20 C.F.R. § 404.1520c(a),(c)(1)-(2) (while there are several factors ALJs must consider, "[t]he most important factors . . . are supportability . . . and consistency").

"Supportability" refers to the principle that "[t]he more relevant the objective medical evidence and supporting explanations presented by a medical source are to support her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be." 20 C.F.R. § 404.1520c(c)(1). "Consistency" refers to the principle that "[t]he more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and

nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be." 20 C.F.R. § 404.1520c(c)(2). Put differently, the ALJ must analyze whether the medical source's opinion is (1) supported by the source's own records; and (2) consistent with the other evidence of record. *See Cook v. Comm'r of Soc. Sec.*, 2021 WL 1565832, at *3 (M.D. Fla. Apr. 6, 2021), *report and recommendation adopted*, 2021 WL 1565162 (M.D. Fla. Apr. 21, 2021).

When articulating the ALJ's assessment of medical opinions, an ALJ need not assign specific evidentiary weight to medical opinions based on their source. *See Tucker v. Saul*, 2020 WL 3489427, at *6 (N.D. Ala. June 26, 2020). While the ALJ must explain how she considered the supportability and consistency factors, the ALJ need not explain how she considered the other three factors. 20 C.F.R. § 404.1520c(b)(2). And, in assessing the supportability and consistency of a medical opinion, the regulations provide that the ALJ need only explain the consideration of these factors on a source-by-source basis. *See* 20 C.F.R. § 404.1520c(b)(1). The regulations do not require the ALJ to explain the consideration of each opinion from the same source (*Id.*). An ALJ's evaluation of a medical opinion need not repeat a previously stated factual examination of a plaintiff's medical history. *Raper v. Comm'r of Soc. Sec.*, 89 F.4th 1261, 1273-1275 (11th Cir. 2024). In general, courts consider the regulatory framework as being "highly deferential to the Commissioner." *Anthony v. Kijakazi*, 2021 WL 4304725, at *4 (S.D. Ga. Sept. 3, 2021), *report and recommendation adopted*, 2021 WL 4304721 (N.D. Ga. Sept. 21, 2021).

In the instant case, Dr. Steven Colucci, Plaintiff's primary care physician, completed several forms and provided a letter concerning Plaintiff's ability to work. On July 6, 2021, Dr. Colucci completed a disability and leave certification form stating that Plaintiff was not able

to perform all job functions because she was a COVID long hauler and would remain incapacitated through September 15, 2021, assuming clinical improvement (Tr. 646–48). On August 12, 2021, Dr. Colucci wrote that Plaintiff was unable to work because of her COVID-related lung disease (Tr. 642–43). In September 2021, he reported that Plaintiff experienced severe dyspnea and was unable to engage in normal conversation without significant shortness of breath (Tr. 634–35). On May 13, 2022, Dr. Colucci completed a medical source statement and determined that Plaintiff could sit for six hours or more; stand and/or walk for only one hour; alternate between sitting and standing every fifteen minutes; could not lift or carry even less than ten pounds; could never push or pull with her upper or lower extremities; could occasionally reach, handle, finger, and feel; required hourly ten-minute unscheduled breaks and two ten-minute walking breaks each hour; and would be absent four or more days per month (Tr. 715–16).

The ALJ found Dr. Colucci's opinions and forms "less persuasive," reasoning that, although Plaintiff's contemporaneous physical examination with Dr. Colucci in August 2021 revealed tachypnea and respiratory distress during pulmonary testing, the remainder of the examination including Plaintiff's musculoskeletal motion, heart rate and rhythm, and breath sounds were unremarkable (Tr. 28) (citing Tr. 626, 628–29). The ALJ further noted that Plaintiff's other examinations frequently showed normal pulmonary effort, normal breath sounds, no wheezing, no respiratory distress, and normal musculoskeletal findings (*Id.*) (citing Tr. 316–18, 322, 324, 326–28, 652, 970–72). Ultimately, the ALJ concluded that Dr. Colucci's opinion Plaintiff could not perform less than sedentary work with additional extreme restrictions was unsupported by the medical evidence of record and Plaintiff's "own activities"

(*Id.*). Plaintiff's other medical records included pulmonary function testing and the prior administrative medical findings of two state agency medical consultants.

As noted by the ALJ, Plaintiff's pulmonary function testing produced varying results. On March 23, 2022, Plaintiff underwent a spirometry test at Tampa Bay Pulmonary Medicine, P.A. which revealed no obstruction, normal forced vital capacity and forced expiratory volume measurements, and normal diffusion capacity after correction for alveolar volume (Tr. 685). However, a second spirometry test in July 2023 revealed moderate obstructive lung disease, moderate restrictive lung disease, and moderately reduced diffusion capacity (Tr. 1082). The ALJ expressly considered this later testing and recognized that the evidence supported some degree of respiratory restriction (Tr. 28). However, the ALJ also observed that a physical examination conducted shortly after the July 2023 testing was largely unremarkable, showing normal pulmonary effort, no respiratory distress, normal breath sounds, no wheezing, and normal musculoskeletal functioning, although tachypnea was present during pulmonary testing (*Id.*) (Tr. 970–72). The LAJ thus found it reasonable to limit Plaintiff to the reduced range of sedentary work given in her RFC (*Id.*).

At the initial level, state agency medical consultant Dr. Aixa Garcia determined that Plaintiff could perform sedentary work with additional postural, speaking, and environmental restrictions (Tr. 66–72). The ALJ found Dr. Garcia's limitation to sedentary work generally persuasive (Tr. 27). At reconsideration, Dr. P.S. Krishnamurthy determined that Plaintiff could perform a reduced range of light work, including standing or walking for four hours and sitting for approximately six hours in an eight-hour workday (Tr. 74–81). The ALJ found this assessment less persuasive because the record supported greater limitations, including a restriction to sedentary work exertional restrictions (Tr. 27).

Plaintiff argues that the ALJ's analysis relied on isolated normal findings, did not adequately address the supportability and consistency of Dr. Colucci's opinion, failed to identify which of Plaintiff's own activities were inconsistent with Dr. Colucci's opinion, and consequently produced an incomplete RFC and erroneous step four finding (Doc. 13 at 7–11). In response, the Commissioner states that the decision, when taken as a whole, provides sufficient justification for why Dr. Colucci's severe limitations were not supported by his medical records and were inconsistent with both prior administrative medical findings and longitudinal medical data (Doc. 23 at 13–17).

The Court agrees with the Commissioner. As an initial matter, before evaluating Dr. Colucci's opinions, the ALJ devoted several pages to Plaintiff's respiratory complaints, examination findings, treatment, and pulmonary function testing (Tr. 23–28). The ALJ then summarized each of Dr. Colucci's forms and specifically compared his limitations with his August 2021 examination and other examinations in the record (Tr. 27–28). Reading the decision as a whole, it would be a needless formality to require the ALJ to repeat the same medical history in the paragraph addressing persuasiveness. *Raper*, 89 F.4th at 1275-76.

Substantial evidence supports the ALJ's supportability finding. According to Dr. Colucci's May 2022 form, the assessed limitations were caused by abnormal pulmonary function tests, short-term memory loss, and significant breathlessness when speaking. (Tr. 716). In her opinion, the ALJ acknowledged Plaintiff's dyspnea, abnormal pulmonary findings and varying test results, but also noted that Dr. Colucci's contemporaneous examination was otherwise unremarkable and that many examinations showed normal pulmonary effort, normal breath sounds, no wheezing, normal musculoskeletal functioning, and normal mental status findings (Tr. 23–28). These findings do not compel the conclusion

that Plaintiff could never lift even less than ten pounds, could never push or pull, could only occasionally handle or finger, required multiple breaks each hour, and would miss at least four days of work each month. Normal musculoskeletal findings were particularly relevant to Dr. Colucci's lifting, pushing, pulling, and manipulative restrictions.

The ALJ also adequately addressed consistency. She compared Dr. Colucci's restrictions with repeated examinations showing largely normal pulmonary and musculoskeletal findings, the prior administrative medical findings, and the differing pulmonary function studies (Tr. 27–28). Contrary to Plaintiff's argument, the ALJ did not ignore the abnormal evidence. She discussed tachypnea, respiratory distress, decreased breath sounds, wheezing, impaired memory, and the July 2023 study showing moderate obstructive and restrictive disease (Tr. 24–28). She then reasonably concluded that this evidence supported significant respiratory limitations but not the extreme degree of restriction recommended by Dr. Colucci.

Plaintiff is correct that the ALJ did not identify which of Plaintiff's alleged activities conflicted with Dr. Colucci's opinion (Tr. 28). The Court therefore does not rely on Plaintiff's work activity as a valid reason for rejecting the opinion, a basis suggested by the Commissioner. (Doc. 23 at 15–16). However, this omission does not require the Court to remand because the ALJ gave several other reasons for finding Dr. Colucci's opinion unpersuasive. Specifically, the ALJ relied on Dr. Colucci's own examination findings, the findings from other medical examinations, Plaintiff's pulmonary function test results, and the opinions of the agency medical consultants. This evidence provided sufficient support for the ALJ's conclusion that Dr. Colucci's proposed limitations were not fully supported by or consistent with the medical record. *See Barron v. Sullivan*, 924 F.2d 227, 230 (11th Cir. 1991)

("Substantial evidence may even exist contrary to the findings of the ALJ, and we may have taken a different view of it as a factfinder. Yet, if there is substantially supportive evidence, the findings cannot be overturned.").

Finally, ALJ was not required to accept Dr. Colucci's statements that Plaintiff was unable to work. The ultimate question of whether a claimant is disabled or capable of working is reserved to the Commissioner, and a medical provider's opinion on that issue is not entitled to special weight. *See* 20 C.F.R. § 404.1520b(c)(3). The ALJ instead properly considered the specific functional limitations identified in Dr. Colucci's medical source statement. Plaintiff's arguments concerning the RFC and the step four finding depend on her argument that the ALJ improperly evaluated Dr. Colucci's opinion. Because the ALJ was not required to adopt limitations she reasonably found unsupported, she was not required to include Dr. Colucci's proposed limitations involving additional breaks, absenteeism, use of the hands, or physical exertion in either the RFC or the hypothetical question presented to the VE. *See Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1161 (11th Cir. 2004). The VE testified that an individual with the RFC assessed by the ALJ could perform Plaintiff's past relevant work as a customer service representative as generally performed in the national economy (Tr. 61–62). Thus, Plaintiff has not shown reversible error in the RFC or step four determination.

For the foregoing reasons, the ALJ applied the correct legal standard in evaluating Dr. Colucci's opinions and reached a conclusion supported by substantial evidence.

## V. Conclusion

ORDERED:

1. The decision of the Commissioner is affirmed.
2. The Clerk is directed to enter final judgment for the Commissioner and close the case.

**ORDERED** in Tampa, Florida, on September 2, 2026.

SEAN P. FLYNN
UNITED STATES MAGISTRATE JUDGE